IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN McCAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0415-WS-N |
| | ) |
| BISHOP STATE COMMUNITY | ) |
| COLLEGE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (doc. 21). The Motion has been briefed and is ripe for disposition.

**I.     Background Facts.[1]**

Plaintiff, John McCampbell, is over the age 40.[2] It is undisputed that McCampbell had previously been employed by defendant Bishop State Community College ("Bishop State") as a part-time adjunct barbering instructor from 2000 to 2005, and as a full-time barbering instructor

---

[1]   The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[2]   The undersigned has reviewed the parties' summary judgment filings in vain for evidence of, or references to, McCampbell's exact age. In fact, the record is silent as to both McCampbell's age in absolute terms and the difference in age between McCampbell and the successful job applicant.

from 2005 to 2007, at which time his employment was terminated. (Sims Aff. (Doc. 22, Exh. 1), at 2.) The reasons for this termination do not appear in the record and are not relevant to the pending Rule 56 Motion.[3]

On July 13, 2011, Bishop State published a written "Position Announcement" for the job of Barbering Instructor. (Sims Aff., at 1, Exh. A.) The Announcement specified that the minimum qualifications for the position included an associate's degree; six years of job experience in the barbering trade or three years of barbering instructional experience; excellent planning, recordkeeping and report-writing skills; and an Instructor License and Master Barber License. (*Id.*) The Announcement directed interested applicants to submit a completed application to Bishop State's Human Resources Office by no later than August 12, 2011. (*Id.*)

Bishop State received four applications for the position, including one from McCampbell. (Sims Aff., at 1.) In its initial screening process, a Bishop State committee determined that two applicants failed to meet the minimum qualifications for the Barbering Instructor job, inasmuch as one of them lacked an associate's degree and another did not have an Instructor License. (*Id.*) The screening committee found that the other two candidates, McCampbell and Wade Dickerson, satisfied the position's minimum qualifications. (*Id.*) On that basis, the committee submitted the names of McCampbell and Dickerson, in unranked alphabetical order, to Bishop State's President, defendant Dr. James Lowe, for his consideration via letter dated August 16, 2011. (Sims Aff., at 2 & Exh. B.)[4]

---

[3] The decisionmaker in this case, Dr. Lowe, testified that he did not look into the circumstances of or the reasons for McCampbell's dismissal from Bishop State in 2007. (Lowe Dep., at 17-19.) Dr. Lowe's testimony was unequivocal that those circumstances played no part in the hiring decision at the heart of the lawsuit. (*Id.* at 19.)

[4] Even though the screening committee had interviewed both Dickerson and McCampbell, the committee did not inform Dr. Lowe of its ranking preference and made no recommendation as to which of the two qualified applicants should be selected. (*Id.* at 1-2.) Other than the names of the two qualified candidates, Dr. Lowe received no input from the committee. (Lowe Aff. (doc. 22, Exh. 2), at 1.) Dr. Betty M. Leslie, the screening committee chair, testified, "[B]oth individuals, both applicants, were submitted. It's not our recommendation to hire anyone." (Leslie Dep., at 13.) As she elaborated, "Once we find out that they are minimally qualified, and they are – the names are submitted to the president, we are finished with our task." (*Id.* at 15.)

The decision of whether to hire McCampbell or Dickerson as Barbering Instructor was vested exclusively in Dr. Lowe. (Sims Aff., at 2; Lowe Aff. (doc. 22, Exh. 2), at 1.) As Dr. Lowe testified, "My role was to select a barber instructor for the Carver campus." (Lowe Dep., at 8.) Upon receipt of the August 16 letter, Dr. Lowe reviewed the applications and resumes of both candidates. (Sims Aff., at 2; Lowe Aff., at 1.) He interviewed McCampbell and Dickerson on August 18, 2011. (Lowe Dep., at 8; Lowe Aff., at 1.) Based on those interviews, Dr. Lowe selected Dickerson for the position. (Lowe Dep., at 9; Lowe Aff., at 2.) The record reflects that Dickerson was 38 years old, had been working at Bishop State for approximately 1.5 years in a temporary position of barbering lab assistant, and had held a Master Barber License for 14 years. (Sims Aff., at 2.)

Dr. Lowe testified that he chose Dickerson over McCampbell for three specific reasons. First, Dr. Lowe explained, Dickerson "exhibited enthusiasm" and appeared "eager for the job" during his interview; meanwhile, McCampbell's demeanor was "very bland," with plaintiff failing to "show any enthusiasm at all" for the position. (Lowe Dep., at 9-10.) Second, according to Dr. Lowe, Dickerson demonstrated "good oral communication skills," "expressed himself well," and was "to the point," whereas McCampbell's answers were "very short, very bland, and did not express himself well." (*Id.* at 10.) In his observations, Dr. Lowe perceived that McCampbell "lacked the oral communication skills" displayed by Dickerson. (Lowe Aff., at 1.)[5] Third, Dickerson offered suggestions during his interview of potential improvements to Bishop State's barbering program through "the use of computers in the instructional process as an innovation for the program." (*Id.* at 2.)[6] By contrast, McCampbell "did not make any suggestions on how to improve the program." (Lowe Dep., at 10.) Dr. Lowe testified that based on these observations and determinations, he "was impressed with what Mr. Dickerson brought to the table and believed he was the best candidate." (Lowe Aff., at 2.)

---

[5] Dr. Lowe opined that this attribute was important because "instructors must have" strong oral communication skills. (Lowe Dep., at 11.) He elaborated, "what impressed me the most were his oral communications skills. As we know, in order to be a good instructor, you have to have good communication skills, and Mr. Dickerson did." (*Id.* at 12.)

[6] Dr. Lowe acknowledged, however, that Dickerson did not present specific proposals for how he intended to use computers in the instructional process, only making a comment "that he would use computers in his instruction program to … improve, upgrade the program." (Lowe Dep., at 21.)

Upon learning of his non-selection, McCampbell filed an age-discrimination suit against Bishop State and Dr. Lowe in federal court. In his only remaining cause of action (Count Three), plaintiff purports to bring a claim against Dr. Lowe under 42 U.S.C. § 1983, alleging that his decision to deny employment to McCampbell was made "on the basis of Plaintiff's age, causing the Plaintiff to be deprived of his right to equal protection from age discrimination pursuant to the Fourteenth Amendment of the United States Constitution, as well as his federally protected rights to be free from age discrimination pursuant to 42 U.S.C. Section 1981." (Doc. 1, ¶ 15.) Count Three does not specify whether Dr. Lowe is being sued in his individual or his official capacity. Be that as it may, plaintiff requests an award of compensatory damages, punitive damages, declaratory relief, injunctive relief (in the form of hiring him into the Barbering Instructor position), and attorney's fees. Defendants now move for summary judgment with respect to the § 1983 claim on several grounds.[7]

---

[7] When defendants filed their Motion for Summary Judgment, plaintiff was also pursuing claims for violation of the Age Discrimination in Employment Act (Count One) and for "Title VII Age Discrimination" (Count Two). (*See* doc. 1, ¶¶ 10-13.) Defendants' Rule 56 motion identified specific legal infirmities in Counts One and Two, and requested dismissal of same. In response, plaintiff wrote as follows: "Plaintiff stipulates that … Plaintiff's claims against Bishop stated in Count I are barred, and agrees to their dismissal, as well as Plaintiff's claims stated in Count II." (Doc. 33, at 2.) Such concessions were prudent. Plaintiff's ADEA claim against Bishop State (an agency of the State of Alabama) is indeed barred by the Eleventh Amendment. *See, e.g., Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013) (recognizing Supreme Court holding that "Congress was without authority to abrogate states' sovereign immunity against ADEA claims"); *Cardwell v. Auburn University Montgomery*, --- F. Supp.2d ----, 2013 WL 1729952, *4 (M.D. Ala. Apr. 22, 2013) ("Lacking a valid abrogation of AUM's sovereign immunity, Plaintiff's claims for … age discrimination [under the ADEA] are due to be dismissed."). Likewise, plaintiff's Title VII age discrimination claim is barred because age is not a protected class under that statute. *See, e.g., Pierre v. Napolitano*, --- F. Supp.2d ----, 2013 WL 3835428, *8 (S.D.N.Y. July 24, 2013) ("Title VII does not protect against discrimination on the basis of age"); *Musgrove v. Government of Dist. of Columbia*, 775 F. Supp.2d 158, 167 (D.D.C. 2011) ("Title VII does not prohibit discrimination on the basis of age."); *Bayless v. Ancilla Domini College*, 781 F. Supp.2d 740, 764 (N.D. Ind. 2011) ("age discrimination is not a proscribed action under Title VII"); *Carlisle v. St. Charles School Dist.*, 507 F. Supp.2d 1018, 1028 (E.D. Mo. 2007) ("Age discrimination claims are not actionable under Title VII and therefore defendant's motion for summary judgment as to this claim is properly granted."). Because plaintiff has consented to the dismissal of his ADEA and Title VII claims, the Motion for Summary Judgment is **granted** as to Counts One and Two, and those causes of action are **dismissed**.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F.Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

**III.    Analysis.**

Plaintiff's sole remaining cause of action is a § 1983 age discrimination claim against defendant Dr. Lowe in an unspecified capacity.[8]  As a threshold matter, defendants challenge whether a § 1983 age discrimination claim is legally cognizable.  Substantial federal appellate authority holds that it is not.  *See, e.g., Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009) ("the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983").[9]  But this line of precedents is not unanimous, as the Seventh Circuit recently staked out a contrary position.  *See Levin v. Madigan*, 692 F.3d 607, 621-22 (7th Cir. 2012) ("In light of our analysis of the ADEA and the relevant case law, … we conclude that the ADEA is not the exclusive remedy for age discrimination in employment claims.").  The Eleventh Circuit does not appear to have weighed in on this question.  What's more, the Supreme Court has granted a writ of certiorari in *Levin* to resolve the emergent circuit split.  *See Madigan v. Levin*, --- U.S. ----, 133 S.Ct. 1600, 185 L.Ed.2d 575 (2013).  Given this uncertainty, the Eleventh Circuit's silence on the question, and the likelihood of impending, definitive resolution by the Supreme Court, the undersigned

---

[8]     Plaintiff couches this § 1983 claim as being grounded in (i) an equal protection right under the Fourteenth Amendment to be free from age discrimination and (ii) a "federally protected right[] to be free from age discrimination pursuant to 42 U.S.C. Section 1981." (Doc. 1, ¶ 15.)  The latter "right" under § 1981 does not exist.  *See, e.g., Adams v. New York State Educ. Dep't*, 752 F. Supp.2d 420, 470 (S.D.N.Y. 2010) ("it is settled that Section 1981 does not prohibit discrimination on the basis of … age") (citations and internal quotation marks omitted); *Torres-Santiago v. Alcarax-Emmanuelli*, 553 F. Supp.2d 75, 85 (D.P.R. 2008) (§ 1981 "does not proscribe age or gender based discrimination"); *Kilcrease v. Coffee County, Ala.*, 951 F. Supp. 212, 215 (M.D. Ala. 1996) ("A claim of discrimination on the basis of age or sex cannot be maintained under § 1981.").  Therefore, plaintiff's § 1983 claim of age discrimination is actionable (if at all) only insofar as it travels on a Fourteenth Amendment equal protection theory.

[9]     *See also Tapia-Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003) ("The ADEA provides the exclusive federal remedy for age discrimination in employment."); *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) ("we are compelled to hold that where a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA"); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989) ("The conclusion is irresistible that the ADEA provides the exclusive judicial remedy for claims of age discrimination.").

declines defendants' invitation to forecast whether the *Madigan* Court will hold that the ADEA is the exclusive federal remedy for age discrimination in employment, such that McCampbell's § 1983 claim would be preempted. The Court assumes (without deciding) that a claim for age discrimination in employment may be brought under § 1983.

Next, defendants maintain that McCampbell's § 1983 claim against Dr. Lowe in his official capacity is barred by Eleventh Amendment immunity. Of course, "[a]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Odebrecht Const., Inc. v. Secretary, Florida Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (citation omitted). "This includes damages claims against State officials in their official capacity." *Id.* "It is also clear that there has been no waiver or congressional override; indeed, the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Id.* (citations and internal quotation marks omitted).[10] Plaintiff offers no rebuttal to this argument, much less any explanation for how his § 1983 damages claim against Dr. Lowe in his official capacity could overcome Eleventh Amendment immunity.

The same immunity defect plagues plaintiff's § 1983 claim for injunctive/declaratory relief against Dr. Lowe, whether in his official or individual capacity. To be sure, pursuant to the *Ex Parte Young* doctrine, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). But "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law," such that a plaintiff "may not use the doctrine to adjudicate the legality of past conduct." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Yet that is precisely what McCampbell would do, as his declaratory/injunctive relief claims ask this Court to adjudicate the legality of Dr. Lowe's past conduct, without alleging ongoing or continuous violations. Furthermore, the law is clear that even with respect to requests for injunctive or declaratory relief, "if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be

---

[10] There can be no serious debate that Bishop State is a state agency entitled to Eleventh Amendment immunity. *See, e.g., Ross v. Jefferson County Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) ("The Eleventh Amendment protects the immunity of not only the states, but of state agencies and entities that function as an 'arm of the state.'") (citation omitted).

barred by the Eleventh Amendment." *Id.* Such is the case here, inasmuch as McCampbell would have this Court order Dr. Lowe to hire him into the Barbering Instructor position, which Dr. Lowe can only do in his official capacity and which would effectively restrain Bishop State's autonomy and invade the state's sovereignty as much as an award of damages would.

To the extent that plaintiff has asserted any claims against Dr. Lowe that might survive an immunity analysis, defendants remain entitled to summary judgment because such claims fail on the merits. Plaintiff's circumstantial age discrimination claim is subject to the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Dogulas*, McCampbell is required to make a *prima facie* showing of age discrimination. At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. … If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted). Defendants have not challenged the sufficiency of plaintiff's *prima facie* showing, and there is no reasonable argument that defendants have failed to meet their light burden of articulating a legitimate nondiscriminatory reason for selecting Dickerson over McCampbell.[11] Accordingly, the summary judgment analysis turns on the question of pretext.

---

[11] In his summary judgment brief, plaintiff suggests that defendants have not articulated a legitimate nondiscriminatory reason because "Dr. Lowe's explanation is plainly mimics [*sic*] the testimony provided by Bettie Leslie" and "the reasons provided by Lowe are vague, nebulous, and essentially explanations any employer could provide as an explanation for a hiring decision." (Doc. 33, at 3.) If plaintiff means to argue that defendants have not satisfied their *McDonnell Douglas* burden of production, that contention fails. "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted). The employer's burden is "exceedingly light," "involves no credibility determination," and is satisfied "[s]o long as the employer articulates 'a clear and reasonably specific' non-discriminatory basis for its actions." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 770 (11th Cir. 2005). Dr. Lowe's testimony that he selected Dickerson over McCampbell because of three specific nondiscriminatory observations during the interview process plainly suffices to discharge defendants' burden to articulate a nondiscriminatory reason for failing to hire McCampbell.

Recall that Dr. Lowe testified that, after interviewing both candidates, he selected Dickerson because (i) Dickerson exhibited enthusiasm for the job, whereas McCampbell did not; (ii) unlike McCampbell, Dickerson demonstrated strong oral communication skills, which Dr. Lowe deemed important for an instructor to possess; and (iii) Dickerson offered suggestions for the improving the program, whereas McCampbell did not. To demonstrate that these legitimate nondiscriminatory reasons were a pretext for unlawful age discrimination, McCampbell "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (citation omitted); *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. … Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088 (citation omitted); *see also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (plaintiff may satisfy burden of showing pretext "by showing that [defendant's] proffered reasons are not credible").

Plaintiff has not made a showing of pretext. He has identified no weaknesses, implausibilities, inconsistencies, or contradictions in Dr. Lowe's proffered reasons for selecting Dickerson over McCampbell. He has not shown, for example, that Bishop State actually did not prefer enthusiastic instructors with good oral communication skills and ideas for improving instructional programs. He has not identified facts casting doubt on the veracity of Dr. Lowe's statement that he subjectively perceived Dickerson to display these attributes and McCampbell not to do so. He has not demonstrated that Dr. Lowe's decision to hire Dickerson was inconsistent with any Bishop State policies or practices. To be sure, plaintiff argues that "[a] reasonable juror could conclude that the older, more experienced Plaintiff was denied the position based on his age, and choose not to believe the explanation given by Lowe." (Doc. 33, at 3.) But plaintiff presents no evidence and advances no argument to support such an assertion. Why would a reasonable factfinder disbelieve Dr. Lowe's statement that he chose not to hire McCampbell because the other applicant showed more enthusiasm, better oral communication

skills, and more ideas for improvements than McCampbell did? Even if it did, how could a reasonable factfinder conclude that these reasons were pretext for age discrimination? What record facts support a reasonable inference that McCampbell's age had anything to do with the challenged hiring decision? Plaintiff answers none of these questions, and has not shown that defendants' stated legitimate reasons for not hiring him were a pretext for unlawful age discrimination.[12]

On this record, no reasonable jury could conclude that defendants' stated reasons were false and that the real reason Dr. Lowe selected Dickerson (and not McCampbell) for the Barber Instructor position was that McCampbell is older than Dickerson. Accordingly, to the extent that any portion of Count Three withstands defendants' asserted immunity defenses, summary judgment remains appropriate for defendants on the merits pursuant to *McDonnell Douglas*.

## IV. Conclusion.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (doc. 21) is **granted**, and plaintiff's claims against both defendants are **dismissed with prejudice**. A separate judgment will enter.

DONE and ORDERED this 12th day of November, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] At most, plaintiff appears to suggest that McCampbell's non-selection was pretextual because he had more teaching experience than Dickerson. (Doc. 33, at 2, 3.) The record is devoid of evidence, however, that Bishop State made hiring decisions based on total teaching experience, or that Dr. Lowe's failure to accord primacy to the experience criterion was in any way inconsistent, implausible or in conflict with defendants' hiring procedures, policies or practices. Furthermore, plaintiff's suggestion that Dr. Lowe's testimony was not credible because it "mimics the testimony provided by Bettie Leslie" is factually inaccurate. Dr. Leslie did not testify as to why Dickerson was chosen over McCampbell and expressly denied having made any hiring recommendation. (Doc. 33-1, at 13-14.)